# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARVIN L. CARTER, | |
| Plaintiff, | |
| v. | Case No. 16-CV-1430-JPS |
| JOSH KUSPA, WILLIAM J. ESQUEDA, LAURA A. CRIVELLO, | **ORDER** |
| Defendants. | |

## I. BACKGROUND AND PROCEDURAL POSTURE

On October 25, 2016, Plaintiff Marvin L. Carter ("Carter"), an individual proceeding pro se, filed a complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights by the Milwaukee Police Department ("MPD"), various of its employees, and then-Assistant District Attorney Laura Crivello. ECF No. 1. At the time that Carter filed his complaint, he was confined at Milwaukee County Jail. *See id*.[1] Carter alleges that on the night of February 16, 2016, the MPD entered his residence to arrest him and search the premises. *Id*. He was accused at that time of having made "6 controlled buys" and was eventually charged with "possession of cocaine, possession of heroin and possession of a firearm." *Id*. at 5.

---

[1]As of the filing of Carter's proposed amended complaint on September 28, 2021, he was confined at Stanley Correctional Institution. ECF No. 61. In a communication from Carter on February 18, 2022, he attested to having been released from prison and stated that he was living in Milwaukee. ECF No. 62. His mailing address was updated accordingly. *Id.* More recently, however, Carter's September 15, 2022 letter to the Court was addressed from "Milwaukee Secure Detention Facility." ECF No. 63.

For relief, Carter requested $1,500,000 in compensatory damages and $1,500,000 in punitive damages for the time he has spent incarcerated. *Id*. at 7. He additionally requested that the Court order defendant Laura Crivello to "drop all charges, because she know[s] that detective John Kuspa and William J. Esqueda acted in bad faith by falsifying the affidavit to attain a search warrant . . . ." *Id*. at 8. Carter also requested that the Court order the officers to stop "tampering with evidence," and ordered Defendants to produce various pieces of evidence and information relevant to his criminal proceedings. *Id*. at 6.[2] Carter also filed a motion to proceed in forma pauperis, ECF No. 2, which the Court granted, EF No. 11.

On August 31, 2017, the Court performed an initial screening of Carter's complaint. *Id*. The Court deduced that Carter appeared to be attempting to raise a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights. *Id*. The Court further noted that *Heck v. Humphrey*, 512 U.S. 477 (1994) was implicated because of Carter's "parallel criminal proceedings." *Id*. at 6.[3] However, the Court concluded that "[a]s long as the plaintiff's claims do not impugn the validity of his conviction or sentence, courts can entertain Section 1983 suits based on police investigative conduct that violates the Fourth Amendment." *Id*. (internal citations omitted). The Court also noted that Defendant Crivello, to the extent the complaint lodged allegations against her, may be protected by prosecutorial immunity, but the Court could not conclude at the time of its writing

---

[2]In his amended complaint filed September 28, 2021, Carter does not renew these requests for injunctive relief against the officers and against Defendant Crivello.

[3]Milwaukee County Case No. 2016-CF-000762 (hereinafter, "2016-CF-762").

"whether Crivello's conduct falls outside the bounds of absolute immunity." *Id*. at 8; *see also infra* note 10.

The Court ultimately dismissed MPD as a defendant from the action, writing that the "police department cannot be liable for its officers' constitutional violations by pure operation of respondeat superior; instead, Plaintiff must allege that it had a policy or custom which was the 'moving force' behind their constitutional violations." *Id*. at 9. Carter had made no such allegations, nor had he even mentioned MPD at all in his factual allegations. *Id*.

The Court further wrote that despite its findings that "Plaintiff may proceed on the various Fourth Amendment claims detailed above, it must nevertheless put a temporary halt to these proceedings" during the pendency of Carter's then-ongoing criminal appeal. *Id*. (citing *Younger v. Harris*, 401 U.S. 37, 53 (1971); *Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995)). The Court noted that *Simpson* required the Court to "dismiss Plaintiff's request for an order directing Defendants to produce certain items and documents to help him prepare his defense," since such a request was one for "injunctive relief, the grant of which would violate the principles animating *Younger* abstention." *Id*. at 10. "Second, the Court must stay the remaining claim for damages pending final disposition of the criminal proceedings." *Id*.

The Court concluded by summarizing that Carter could proceed, following the stay of his case, on his (1) Fourth Amendment claim for the unreasonable manner of the February 16, 2016 search; (2) Fourth Amendment claim for Kuspa and Esqueda's conduct in falsifying statements in the affidavit underlying the search warrant; and (3) Fourth Amendment claim for Crivello's submission of the search warrant

application knowing that the supporting affidavit contained falsehoods. *Id*. Regarding Carter's then ongoing criminal proceedings, the Court again warned Carter that "[i]f the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal . . . ." *Id*. Carter's federal case was administratively closed in the meantime. *Id*.

Over the course of the next several years, Carter filed monthly status updates regarding his criminal proceedings, as ordered by the Court. He relayed that he had pled guilty in his parallel Milwaukee County criminal case,[4] and that he was engaged in the process of seeking postconviction relief and criminal appeal. *See, e.g.,* ECF No. 60.

On September 1, 2021, as a result of Carter's appeal of his Milwaukee County criminal case,[5] a stipulation for sentence modification was filed therein. 2016-CF-762; 2018XX001530-CR. On September 2, 2021, and then on October 18, 2021, amended judgments of conviction were entered therein. 2016-CF-762; see also ECF No. 61-1. A "Notice of Completion" was docketed in that case on March 25, 2022. 2016-CF-762; 2018XX001530-CR.

On September 28, 2021, Carter filed a proposed amended complaint in his federal case originally filed in 2016. ECF No. 61. Carter's proposed amended complaint adds as defendants Detective Aaron Busche and Officer Chemlick, both employees of the MPD. *Id*. at 2. The substantive allegations of Carter's amended complaint do not appear to have materially differed from those provided in his original complaint in 2016.[6] In addition

---

[4]Carter pled guilty in Milwaukee County Circuit Court to possession of a firearm and possession of heroin with intent to distribute. 2016-CF-762.
[5]Case No. 2018XX001530 before the Wisconsin Court of Appeals.
[6]For a more thorough recitation of Carter's factual allegations, refer to the Court's August 31, 2017 screening order at ECF No. 11. Although Carter's

to realleging the same facts as the original complaint, Carter provides several additional factual details. The following are quotes provided in Carter's amended complaint:

- Defendants Kuspa and Crivello did knowingly deceive the Milwaukee County Circuit Court into issueing [sic] a search warrant for Mr. Carter's residence when they falsely asserted that Defendant Kuspa did observe Mr. Carter make a 'controlled buy' from the residence.
- Defendants Kuspa, Busche, Esqueda, and Chemlick did failt [sic] to knock and announce before entering Mr. Carter's residence.
- Mr. Carter has since suffered from nightmares, anxiety, depression, sleep disturbances, and PTSD symptoms as a result of what he believes was a near death experience, threatening actions that effected [sic] his girlfriend and her children, and the nefarious nature in which the Defendants did obtain a court order to enter his home and do these despicable things.
- On February 11, 2016, Defendants Kuspa and Crivello did swear out an affidavit to search Mr. Carter's residence that they knew was materially false and did not provide an [sic] nexus between the residence and any illegal activity.
- As a result of these Defednants [sic] having provided false and/or misleading statements to the Milwaukee Coutny [sic] Circuit Court an illegal warrant was issued, which did result in an illegal search of Mr. Carter's residence and the seizure of Mr. Carter.

*Id*.

---

September 28, 2021 amended complaint will serve as the operative complaint in this action, the factual allegations provided in his original complaint do not appear to materially differ therefrom.

Despite the Court's dismissal of the MPD as a defendant in the action, Carter lists the MPD as a defendant in his amended complaint. *Id*. He also provides that "[o]n information and belief Defendant MPD had a policy that required its officers and employees not to violate the laws and constitutions of the United States of America." *Id*. at 5.

On September 12, 2022, Carter filed with the Court a letter inquiring whether "the stay [has] been lifted" in his federal case. ECF No. 63. He also drew the Court's attention to the amended complaint he had filed on September 28, 2021 and indicated that he had "won [his] appeal" in his state criminal case. *Id*.

## 2. DISCUSSION

The Court is generally required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court therefore undertook a thorough screening of Carter's complaint on August 31, 2017. *See* ECF No. 11. Because Carter's amended complaint does not appear to add new claims or allege materially different facts, the Court will not perform a second screening and will rely on the conclusions reached in its August 31, 2017 screening order. The Court will accordingly omit here the legal standard for the screening of prisoner complaints.[7]

What the Court must instead address at this time is the resolution of Carter's state criminal case. As mentioned previously, Carter indicated in an August 30, 2021 communication to the Court that he had plead guilty in his parallel Milwaukee County criminal case and that he was engaged in the process of seeking postconviction relief and criminal appeal. ECF No.

---

[7]For a recitation of those standards, see ECF No. 11 at 1-3.

60. He later updated the Court that he had "won [his] appeal," although he did not provide the appeal's case number. ECF No. 63. A search of the Wisconsin Court System database indicates that on July 25, 2017, Carter filed in his state court case a notice of intent to pursue post-conviction relief. *See* 2016-CF-762. As noted above, a notice of completion was therein entered on March 3, 2022. *Id*. A search of the Wisconsin Court System database does not show any further appeal. Additionally, in his amended complaint Carter attests that he has "not begun other lawsuits in State or federal Court relating to the facts in this action." ECF No. 61 at 3. Since Carter's appeal appears to have concluded, and moreover since the time for Carter to seek any further relief from the Wisconsin Supreme Court has elapsed,[8] the Court sees no reason at this time why the stay imposed on this case in 2017 ought not be lifted. Accordingly, the Court will lift the stay.

The status of any potential appeal or postconviction relief was also considered relevant by the Court at the time of its August 31, 2017 screening order not only for purposes of the stay, but also because:

> If the alleged false statements are sufficient to result in voiding the warrant and excluding the evidence obtained with it, *then Plaintiff's claim is not ripe until the conviction which*

---

[8]Wis. R. App. P. § 809.62 ("A party may file with the supreme court a petition for review of an adverse decision of the court of appeals pursuant to s. 808.10 within 30 days of the date of the decision of the court of appeals."). Carter's appeal concluded over six months ago, and furthermore, it arguably did not conclude in an "adverse" decision. *See* 2018XX001530 (resulting in modified sentence). The Court mentions this not because Carter is required to have exhausted state litigation remedies prior to bringing his § 1983 suit under these circumstances, but rather merely in terms of the propriety of lifting the stay. *See Muhammad v. Close,* 540 U.S. 749, 751 (2004) ("*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.").

> *resulted from the evidence obtained with that warrant is overturned or set aside*. This is because a claim for damages may not be pursued if its success would necessarily imply the invalidity of the criminal conviction or sentence, and invalidating the February 16, 2017 search would destroy the state's evidence and thereby invalidate the conviction.

ECF No. 11 at 7–8 (emphasis added).[9] It appears that although Carter's sentence was modified via stipulation following his appeal, *see* 2016-CF-762, his conviction was not "overturned or set aside." *See* ECF No. 11 at 7–8. Accordingly, the Court wrote at the time of its initial screening that depending on whether the alleged false statements are sufficient to void the search warrant, Carter's conviction in Milwaukee County Circuit Court could still pose a bar to at least some of the claims underlying his federal § 1983 suit for damages. However, the Court further wrote, if the alleged false statements by the officers are not in and of themselves sufficient to void the warrant (i.e., probable cause sufficient to support the warrant existed even without the alleged false statements) and exclude the evidence thereby obtained, then Carter's state criminal conviction would pose no such bar. *Id.*; *See Muhammad v. Close,* 540 U.S. 749, 751 (2004) ("*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.").

The Court need not speculate as to those possibilities, however, because Carter's state conviction ultimately resulted not from a trial, but

---

[9]*See also Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

rather from his guilty plea. *See* ECF No. 11 at 4 ("Publicly available records show that Plaintiff went to trial on these charges from February 6 to 8, 2017. On February 8, Plaintiff pleaded guilty to counts two and three of the criminal complaint—the heroin and firearm charges."). This distinction makes all the difference. "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise*, 462 U.S. 306, 321 (1983). This is so because "[s]tate law treats a guilty plea as 'a break in the chain of events [that] preceded it in the criminal process . . . .'" *Id.* (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Establishing the Fourth Amendment violations that Carter alleges would not invalidate his conviction because he was not convicted based on the fruits of the alleged violations—he was convicted based on his own admission of guilt. *Id.* Accordingly, Carter's claims are not *Heck*-barred, and moreover Carter has not lost his opportunity to maintain his claims for alleged Fourth Amendment violations by virtue of his having pled guilty in his state criminal case. *See id.* (rejecting the idea that a guilty plea constitutes a waiver of Fourth Amendment claims, and rejecting the lower court's conclusion that a guilty plea necessarily implied that the search giving rise to the incriminating evidence was lawful). It remains to be seen, however, whether Carter's claims as to these alleged constitutional violations are barred by virtue of application of the doctrines of issue preclusion or collateral estoppel (if these alleged violations were litigated in the state proceedings). *See id.* at 313, 322 ("[T]he doctrine of collateral estoppel therefore applies to § 1983 suits against police officers to recover for Fourth Amendment violations.") ("We conclude that respondent's

Page 9 of 14
Case 2:16-cv-01430-JPS   Filed 10/18/22   Page 9 of 14   Document 64

conviction in state court does not preclude him from now seeking to recover damages under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation *that was never considered in the state proceedings.*") (emphasis added); *Vinch v. Vorwald*, 664 F.3d 206, 215 (7th Cir. (2011) ("[U]nder applicable Wisconsin law, issue preclusion, also called collateral estoppel, bars the relitigation of a factual or legal issue that actually was litigated and decided in an earlier action."). The fact that Carter apparently went through two days' worth of criminal trial before ultimately pleading guilty may complicate that analysis. *See Haring*, 462 U.S. at 311 ("Unlike a criminal defendant who has been convicted after a full trial on the criminal charges, a defendant who pleads guilty has not necessarily had an adequate incentive to litigate 'with respect to potential but unlitigated issues related to the exclusion of evidence on fourth amendment grounds.'") (internal citation omitted). The Court cannot speak substantively on that issue at this time.

The issue of the basis on which the search warrant rested, and whether that warrant is voided by the inclusion of the false statements allegedly made, involves inquiries the Court cannot make on its own and requires information not yet before it. Accordingly, the Court will leave it to the parties to undertake discovery on these matters and eventually brief the issue of whether the allegedly unconstitutional conduct undertaken by the officers in support of the search warrant (1) actually happened, and (2) sufficient to void the warrant.

As to Carter's re-listing MPD as a defendant in his amended complaint, the Court must again dismiss MPD from the action. Carter's inclusion in his amended complaint of the allegation that "[o]n information and belief Defendant MPD had a policy that required its officers and

employees *not* to violate the laws and constitutions of the United States of America" does not save his claim against MPD. *See* ECF No. 61 at 5 (emphasis added). It is the opposite of what Carter needed to show to maintain his claim against MPD. As enunciated by the Court in its August 31, 2017 screening order, "Plaintiff must allege that [MPD] had a policy or custom which was the 'moving force' behind their constitutional violations." ECF No. 11 at 9 (citing *Minix v. Canarecci,* 597 F.3d 824, 834 (7th Cir. 2010); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985)). Plaintiff alleges that the officers committed constitutional violations against him, but now alleges that the MPD has a policy requiring officers to *adhere to* the laws and constitution of the United States. *See* ECF No. 61 at 5. A policy requiring adherence to the laws and U.S. Constitution would not be the "moving force" behind the officers' alleged constitutionally violative conduct, as their conduct would be precisely contrary to MPD's alleged policy. Accordingly, the Court must dismiss MPD as a defendant from this action.

3.  **CONCLUSION**

Carter's case may proceed in accordance with this Order against Defendants John Kuspa, William J. Esqueda, Laura A. Crivello,[10] Officer

---

[10] The Court's conclusion in its August 31, 2017 that Defendant Crivello, to the extent the complaint lodged allegations against her, may be protected by prosecutorial immunity, remains true. *See Kalina v. Fletcher,* 522 U.S. 118, 125–26 (1997) ("[I]n *Burns v. Reed*, 500 U.S. 478 . . . (1991), after noting the consensus among the Courts of Appeals concerning prosecutorial conduct before grant juries . . . we held that the prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing were protected by absolute immunity."). This very well may be the case, but the Court will again refrain for the time being from deciding "whether Crivello's conduct falls outside the bounds of absolute immunity." *See* ECF No. 11 at 8; *see Marten v. Swain,* 601 Fed. Appx. 446, 449–50 (7th Cir) (citing *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleadings stage is inappropriate . . . .") ("[A]ny immunity

Chemlick, and Aaron Busche. Carter's case shall not proceed against MPD. As enunciated by the Court in its original screening order:

> Plaintiff may proceed on the following claims: (1) a Fourth Amendment claim for the unreasonable manner of the February 16, 2016 search; (2) a Fourth Amendment claim for Kuspa and Esqueda's conduct in falsifying statements in the affidavit underlying the search warrant; and (3) a Fourth Amendment claim for Crivello's submission of the search warrant knowing that the supporting affidavit contained falsehoods.

ECF No. 11.

The Court has enclosed with this Order a guide prepared by court staff to address common questions that arise in cases filed by prisoners. This guide is entitled, "Answers to Prisoner Litigants' Common Questions." It contains information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that the Clerk of the Court shall administratively re-open this action. This case be and the same is hereby **UNSTAYED;**

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon Defendants pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current

---

determination involves a necessarily fact-specific line-drawing exercise that would benefit from greater development of the record . . . .")).

fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that defendants shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order;

**IT IS FURTHER ORDERED** that Defendant Milwaukee Police Department be and the same hereby remains **DISMISSED** from this action; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge