IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

MARVIN L. CARTER,

   Plaintiff,          Case No. 16-CV-1430

v.

JOHN KUSPA
AARON BUSCHE
WILLIAM J. ESQUEDA
OFFICER CHEMLICK
LAURA A. CRIVELLO
MILWAUKEE POLICE DEPARTMENT

   Defendants.

---

**DEFENDANT AARON BUSCHE'S BRIEF IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

---

## <u>INTRODUCTION</u>

Defendant Aaron Busche (herein, "Detective Busche"), by his attorneys, Crivello Carlson, S.C., respectfully submits the following Brief in Support of his Motion for Summary Judgment. All undisputed, material facts necessary to support Detective Busche's Motion for Summary Judgment are contained in the Parties' Joint Statement of Undisputed Facts and Detective Busche's Statement of Facts filed concurrently with this Brief. Detective Busche cites to those facts as relevant in the argument below by citing to "PJSF" and "DBSF," respectively.

Although Marvin Carter's ("Carter") Amended Complaint includes multiple causes of action against multiple defendants, Carter only asserted one claim against Detective Busche:

> 34. Defendants Kuspa, Busche, Esqueda, and Chemlick did violate Mr. CArter's [*sic*] Fourth Amendment rights when they did execute a search warrant in a manner that was constitutionally violative by, inter alia, failing to knock and announce before entering the residence.[1]

(Dkt. 61 at 5).

The Court granted Carter leave to proceed on multiple causes of action; relevant to Detective Busche, Carter was allowed to pursue a Fourth Amendment claim for the alleged unreasonable search. (Dkt. 64 at 12). The Fourth Amendment claim centers on Carter's allegation that "[a]fter obtaining the warrant Defendants Kuspa, Busche, Esqueda, and Chernlick did failt [*sic*] to knock and announce before entering Mr. Carter's residence." (Dkt. 61 at ¶ 11). Because there is no genuine dispute of material fact, and the undisputed facts establish that Carter's claim against Detective Busche fails as a matter of law, Detective Busche respectfully requests that the Court grant his Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, establish that no *genuine* issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (emphasis added). The initial burden is

---

[1] The referenced "residence" was the upper unit of a multi-family home located at 5074 N. 84th Street in Milwaukee, Wisconsin. (Dkt. 61 at ¶ 13). For the sake of simplicity, Detective Busche will herein refer to this unit as "the Property."

on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted to the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). A material fact is one that is outcome-determinative of an issue in the case with substantive law identifying which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

Once the moving party has met this initial burden, the opposing party must go beyond the pleadings and designate the specific facts showing that there is a genuine issue for trial. *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 242. Nor will speculation, hearsay, or conclusory allegations suffice to defeat summary judgment. *Gobitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999).

Further, "[w]hen the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict." *Lawrence v. Kenosha County*, 304 F. Supp. 2d 1083, 1087 (E.D. Wis. 2004) (internal citations omitted). When faced with a summary judgment motion, courts must decide whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion must be granted, and the case dismissed. *Palucki v. Sears Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989).

3

<u>**ARGUMENT**</u>

This Court should grant summary judgment in favor of Detective Busche because Carter lacks standing to bring a Fourth Amendment claim against Detective Busche and any claim he may bring is barred by the doctrine of issue preclusion – the state trial court already determined that the entry into the Property was constitutionally permissive. Additionally, Carter cannot establish a Fourth Amendment claim against Detective Busche as a matter of law. Finally, in the alternative, Detective Busche is entitled to qualified immunity because, under the existing circumstances facing Detective Busche on February 16, 2016, a reasonable law enforcement officer in his position would not have understood his conduct to violate any clearly established right belonging to Carter. Accordingly, Detective Busche respectfully requests that the Court grant his Motion for Summary Judgment.

**I.    CARTER HAS NO STANDING TO BRING A CLAIM AGAINST DETECTIVE BUSCHE.**

The doctrine of standing sprouts from the "case or controversy" requirement of Article III of the United States Constitution. The "irreducible constitutional minimum" of standing requires a plaintiff to demonstrate that it (1) suffered an injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, "in

4

response to a summary judgment motion," the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" that establish standing. *Id.* (quoting Fed. R. Civ. P. 56(e)).

"[S]tanding is not dispensed in gross" but, instead, must be established for each claim and form of relief sought. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). As the Seventh Circuit explained in *Johnson v. United States Office of Personnel Management*, 783 F.3d 655 (7th Cir. 2015), the "fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant the plaintiff standing to challenge other, even related conduct." *Id.* at 661.

Here, Carter both failed to challenge any conduct of Detective Busche and failed to show injury based any of Detective Busche's conduct. "[T]here must be a causal connection between the injury and the conduct complained of." *Lujan*, *supra*, at 560 (internal citations omitted). Specifically, the injury must be fairly traceable to the challenged action; the injury cannot be "th[e] result [of] independent action of some third party not before the court." *Id.* (internal quotations omitted). Not only did Carter fail to demonstrate that any injury is fairly traceable to challenged conduct of Detective Busche, but Carter patently failed to challenge ***any*** of Detective Busche's conduct whatsoever.

### A.    Carter failed to challenge any conduct of Detective Busche.

Carter unequivocally complains that the defendants engaged in an unlawful search because of an alleged failure on law enforcement's part to knock and announce before entering the Property. (Dkt. 61 at ¶¶ 11, 34 ("After obtaining the warrant Defendants Kuspa, Busche, Esqueda, and Chemlick did failt to knock and announce

before entering Mr. Carter's residence. Mr. Carter asserts that the Defendants have violated his Fourth Amendment right to be free from unreasonable searches and seizures by and through the actions of the named Defendants . . . Defendants Kuspa, Busche, Esqueda, and Chemlick did violate Mr. CArter's [*sic*] Fourth Amendment rights when they did execute a search warrant in a manner that was constitutionally violative by, inter alia, failing to knock and announce before entering the residence.")).[2]

However, Detective Busche was not involved in the initial attempted knock and announce or the initial entry into the Property. (PJSF, ¶ 22, Ex. 1033 at 1-2; DBSF, ¶ 8). In fact, the only involvement Detective Busche had in the subject search was entering and searching the basement of the Property (PJSF, ¶ 26, Ex. 1033 at 4; DBSF, ¶ 10). Detective Busche was not a member of the entry team, (PJSF, ¶ 22, Ex. 1033 at 1-2), and there is no evidence to support Carter's contention that Detective Busche was party to the alleged failure to knock and announce.[3]

Thus, Carter failed to allege any wrongful conduct on the part of Detective Busche, and he cannot contend that any potential injury he sustained is "fairly traceable" to Detective Busche's conduct. Therefore, Carter lacks standing to bring a claim of unreasonable search against Detective Busche.

---

[2] During Carter's deposition, Carter testified that his specific evidence to support his claim for an unreasonable search was that Detective Busche searched the basement (DBSF, ¶ 1). While it is unclear, in the event Carter is challenging the search above and beyond the alleged failure to knock and announce, that argument fails. As explained below, Carter cannot, as a matter of law, allege that Detective Busche's search of the basement was unconstitutional as Carter had no reasonable expectation of privacy in the basement of the Property.

[3] As explained below, Detective Busche contests Carter's allegation of any failure to knock and announce.

**B.      Carter has not identified any injury in fact from Detective Busche's actions.**

Even if this Court determines that Carter has alleged a challenge to Detective Busche's search of the basement, Carter cannot identify any injury in fact that he suffered from Detective Busche's conduct.

Courts define "injury in fact" as "an invasion of legally protected interest" that is (1) "concrete and particularized"; and (2) "actual or imminent, no conjectural or hypothetical." *Lujan, supra*, at 560 (internal quotations and citations omitted). "[T]he injury in fact test requires more than an injury to cognizable interest. It requires that the party seeking review be himself among the injured." *Id*. at 563 (internal quotations omitted).

Throughout his deposition, Carter emphatically denied having any ownership or interest in the Property, or even stepping foot in its basement. (DBSF, ¶ 2). What's more, Carter emphasized that he only "was sleeping over at" the Property, not "staying with" the tenant of the Property. (*Id*.).

Here, there is no dispute that Carter has *identified* a legally protected interest: the right to be protected from unreasonable searches and seizures.[4] However, even if this Court found that Detective Busche's actions were unreasonable, the actions did not violate *Carter's* Fourth Amendment rights, or the Fourth Amendment rights of any citizen, for that matter.

---

[4] Despite Carter *identifying* a protected interest, Detective Busche maintains that there was no *invasion* of the protected interest whatsoever, as described below.

The Fourth Amendment protects citizens from unreasonable searches of their "persons, houses, papers, and effects." U.S. CONST. AMEND. IV. While overnight guests are generally afforded a reasonable expectation of privacy in their hosts' homes[5], *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990), "there is generally no reasonable expectation of privacy" – guest or otherwise – "in shared and common areas in multiple-dwelling residential buildings. *United States v. Sweeney*, 821 F.3d 893, 902 (7th Cir. 2016) (internal citations omitted; collecting cases).

In *Sweeney*, law enforcement officers executed a warrantless search of a common space in Sweeney's apartment building. *Id*. at 897. Law enforcement found a handgun during that search, which served as the basis for various criminal convictions. *Id*. The apartment building in question had six individual units and two general use exterior doors that were typically closed and locked. *Id*. There was a shared staircase which led down to the basement. *Id*.

The Seventh Circuit found Sweeney had no expectation of privacy in the basement. *Id*. at 902. The court explained that it was not objectively reasonable to think the basement would be private as the basement space was "shared by all of the tenants," there were no individualized storage space, and there was no door or locked entry to the basement itself. *Id*. at 902. Put simply, Sweeney "did not have any form of exclusive control over the basement," thus "any such trespass would be a trespass against the building owner, not against any individual tenants." *Id*. at 900. Importantly,

---

[5] As Carter testified to at his deposition, he was merely an overnight guest at the Property who never stepped foot in the basement. (DBSF, ¶ 2).

the Court explicitly held that it made no difference that the exterior door of the building was locked to exclude the public. *Id*. at 902-03.

The basement of the subject Property in this case also had no door, lock, or other barrier to entry and was a space accessible to all tenants and their guests. (DBSF, ¶ 3). In Carter's own words, he could have gone down there, and he was not even a tenant. (DBSF, ¶ 3). While law enforcement needed to breach the front door to enter the Property, a lock on an exterior door makes no difference when it comes to any reasonable expectation of privacy in such shared space. *Sweeney, supra*, at 902-03. Simply put, there is none. *Id*.

Carter has not identified any "injury in fact" that stemmed from Detective Busche's search of the basement to the Property because such injury cannot exist. Not only would a tenant lack a reasonable expectation of privacy in the shared space, Carter, an overnight guest, certainly lacked any expectation of privacy in the basement. There is no question – Carter was not injured by Detective Busche's search of the Property. Thus, Carter lacks standing to bring a Fourth Amendment claim against Detective Busche and this Court should dismiss Carter's claim against Detective Busche.

## II. ALTERNATIVELY, CARTER'S FOURTH AMENDMENT CLAIM IS BARRED BY THE DOCTRINE OF ISSUE PRECLUSION.

"Issue preclusion (formerly known as collateral estoppel) prevents a party from relitigating issues that he has litigated in a prior action." *Mentzel v. Gilmore*, 54 F. Supp. 2d 896, 900 (E.D. Wis. 1999) (internal citations omitted). Issue preclusion stems from the

concept that there is a point at which "litigation involving [a] particular controversy must end." *Lindas v. Cady*, 175 Wis.2d 270, 279, 499 N.W.2d 692 (Ct. App. 1993). If "an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).

Federal courts look to the law of the state of the preclusive judgment to determine the elements of issue preclusion, see *Mentzel, supra*, at 900. In Wisconsin, issue preclusion involves a two-step analysis: "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair." *In re Estate of Rille ex rel. Rille*, 2007 WI 36, ¶ 36, 300 Wis. 2d 1, 728 N.W.2d 693. As discussed below, both steps of the analysis require a finding that issue preclusion bars Carter's claim against Detective Busche.

### A.    Issue preclusion is applicable as a matter of law.

The first step in the issue preclusion analysis requires determinations that (1) "the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action," and, that (2) "the determination was essential to the judgment." *Id.* ¶ 37.

### i. Carter's illegal search claim was actually litigated in a prior proceeding.[6]

An issue will be considered "'actually litigated' when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *In re Estate of Felt*, 2002 WI App 157, ¶ 9, 256 Wis. 2d 563, 647 N.W.2d 373 (internal quotations omitted). Further, whether a court's determination of an issue is considered a valid and final judgment depends on the following factors: (1) "the parties were fully heard"; (2) the prior "court supported its decision with a reasoned opinion"; (3) that court's "decision was subject to appeal or was in fact reviewed on appeal"; and (4) the decision was "procedurally definite." *Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665, 677–78 (E.D. Wis. 2018) (citing Restatement (Second) of Judgments § 13 cmt. g. and applying it to issue preclusion). For example, in *Davis v. Schott*, Case No. 17-CV-1355-JPS, 2019 WL 2717207, at *5 (E.D. Wis. June 28, 2019), this Court determined that because evidentiary hearings were held, additional briefing had been ordered, and a state court issued an oral ruling, the issue had been actually litigated and was final.

Here, as shown by the state trial court's decision, the merits of Carter's present constitutional challenge were fully litigated by way of an evidentiary hearing in the state trial court and the state trial court's subsequent ruling. (PJSF, ¶ 34, Ex. 1019). In the state trial court, Carter filed a Notice of Motion and Motion to Suppress Physical Evidence, challenging "[t]he forcible entry of defendant's residence." (PJSF, ¶ 29, Ex.

---

[6] As Detective Busche had no involvement in the drafting or securing of the search warrant (DBSF, ¶ 4) and Carter has no alleged anything to the contrary, Detective Busche's issue preclusion argument focuses mainly on the alleged illegal search. However, it is worth noting that issue preclusion also applies to Carter's challenge to the warrant itself, as the state trial court already ruled against him in the matter. (PJSF, ¶ 33, Ex. 1019 at 6-10).

1015 at 1; see also PJSF, ¶ 31, Ex. 1017 at 1). Specifically, Carter argued that "the officers' immediate forcible entry of [his] residence violated his Fourth Amendment rights." (PJSF, ¶ 29, Ex. 1016 at 3; see also PJSF, ¶ 31, Ex. 1017 at 4). In other words, Carter asked the state trial court to find the officers executed an unreasonable search by allegedly failing to knock and announce prior to entry.

The state trial court held an evidentiary hearing on the matter, where Detective Kuspa testified that Detective Lopez knocked and announced on the front door to the Property multiple times. (PJSF, ¶ 39, Ex. 1019 at 16:19-21, 17:21-18:11). After approximately fifteen cycles of Detective Lopez knocking and announcing, a voice from inside the Property screamed "who is it." (*Id.* at 18:12-18). At that point, Detective Lopez announced (again) that it was Milwaukee Police. (*Id.* at 19:2-8). Detective Lopez then informed the other law enforcement officers present that someone inside the home was fleeing. (*Id.* at 19:13-15). In response, law enforcement breached the front door to the Property. (*Id.* at 20:4-11). Law enforcement entered the Property, proceeded upstairs while continuously announcing their presence, until they reached the door to Carter's unit, which Detective Lopez breached. (*Id.* at 20:14-17, 23:14-19, 23:24-24:2).

After hearing the evidence, the state trial court concluded:

15          . . . The Court will find
16     that because that exigency occurred at that lower
17     level, the officers could then run up the stairs and
18     make entrance to the second door without knocking and
19     announcing.

(*Id.* at 38:15-19).

Again, in his present claim, Carter only alleged that law enforcement violated his Fourth Amendment rights by failing to knock and announce. (Dkt. 61, ¶¶ 11, 34). Carter makes no challenge to the jurisdiction or competency of the Wisconsin state courts that previously ruled against him; he simply seeks another proverbial "kick at the cat."

Carter's § 1983 claim has already been determined by another court by a valid and final judgment, and therefore this Court is precluded from addressing it as a matter of law. *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 476 (1982) (stating that "preclusion rules apply in § 1983 actions" which may bar federal courts from deciding "claims previously litigated in state courts.").

> ii. **Carter's Fourth Amendment violation claim was essential to the judgment in the state trial court.**

In considering whether the issue was essential to the prior court's judgment, courts are to view the issues broadly. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 157 (2015). This broad view of the issues helps "prevent repetitious litigation of what is essentially the same dispute." *Id.* (quoting Restatement (Second) of Judgments § 27, Comment c, at 252-53).

For instance, in *Mentzel*, the Eastern District held that issue preclusion barred a § 1983 claim for violation of the plaintiff's First Amendment rights based on an alleged unconstitutional application of a local ordinance relating to cabaret establishments. 54 F. Supp. 2d at 897. There, the plaintiff's strip club establishment received multiple citations for violating the municipality's "cabaret" ordinance. *Id.* at 898–99. In his defense, the plaintiff argued that the ordinance was unconstitutional, and the Wisconsin

Court of Appeals held that, although the ordinance was not unconstitutionally applied to the plaintiff via the citations, the ordinance itself was unconstitutionally overbroad on its face. *Id.* at 899.

After reviewing the state court proceedings, the Eastern District held that the plaintiff's § 1983 claim was barred by the doctrine of issue preclusion. *Id.* at 899–900. The Court reasoned that the plaintiff's Section 1983 action claimed that "the **enforcement** of the ordinance violated his First Amendment rights," which mirrored his state-court defense that the ordinance was unconstitutional ***as applied*** to him. *Id.* (emphasis added). The Court concluded that, because "[t]he issue of whether the County's ordinance was unconstitutional as applied to [the plaintiff] was raised by him during his appeal [in state court]," issue preclusion barred his § 1983 action raising the same issue. *Id.* at 900.

Here, just as with the plaintiff's state court defense and subsequent § 1983 claim in *Mentzel*, Carter's fully litigated Fourth Amendment violation claim in state court is identical to the § 1983 claim he now pursues federal court. Indeed, courts utilize the exact same standard to determine whether a search violated the Fourth Amendment in criminal cases as civil cases: whether a search by law enforcement violated a person's reasonable expectation of privacy.

Thus, the factual and legal allegations in Carter's Complaint are one and the same as the facts and arguments he presented in the state trial court, indicating that Carter's present lawsuit is materially identical the suppression motion he raised in the state court. In Carter's state court action, he asked the court to determine whether law

14

enforcement conducted an unreasonable search, which required the court to determine whether there was a valid exception to the knock and announce requirement. The state trial court's determination that law enforcement acted lawfully in executing the search warrant was essential to Carter's ultimate conviction.

Here, Carter again is asserting law enforcement violated his Fourth Amendment by failing to knock and announce. The allegations Carter makes in the instant lawsuit are identical to those made in his motion to suppress evidence in the state trial court. The state trial court heard the motion, conducted an evidentiary hearing, and issued its decision to deny Carter's motion. For these reasons, issue preclusion is applicable as a matter of law.

**B.    It is fundamentally fair to bar relitigation of the knock and announce issue in this action.**

After it is shown that an issue can be precluded, the court then analyzes "whether the application of issue preclusion would be fundamentally fair." *Rille*, 2007 WI 36, ¶ 36. When determining whether issue preclusion is fundamentally fair, courts analyze the following factors:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

15

*Boerner*, 326 F. Supp. 3d at 679 (internal quotations omitted).

First, Carter was able to seek review of the state trial court's decision and failed to do so, either in an interlocutory appeal or a post-conviction appeal. Notably, Carter was aware of his right to appeal, as he filed multiple post-conviction appeals attacking other aspects of his conviction. (See, *e.g.*, PJSF, ¶ 45, Ex. 1027; see also PJSF, ¶ 50, Ex. 1029). But, Carter did not challenge the state trial court's finding that law enforcement's entry into the Property and subsequent search was constitutional, despite having the opportunity to do so.

Second, there has been no substantial change to the law surrounding the knock and announce requirement since the state trial court issued its ruling. Third, there is no appreciable difference in the quality or extensiveness between the proceedings in state court compared to the present action. See *Moore v. Labor & Industry Review Com'n*, 175 Wis. 2d 561, 565, 568, 499 N.W.2d 288 (Ct. App. 1993) (explaining that, because a federal court reviewed an administrative law judge's determination, the state court was precluded from deciding the matter because there was no difference between the quality or extensiveness between the state and federal courts).

Fourth, Carter had every incentive to meet his burden of fully litigating his claim in state court. In fact, if the knock and announce issue was legitimate and if Carter successfully challenged same, there is a distinct possibility he would not have been convicted of the underlying offense. There is no greater incentive than maintaining one's freedom. Further, Carter did appeal unfavorable rulings post-conviction, which shows his eagerness, aptitude, and opportunity to adjudicate legitimate issues in the

16

prior action. But, Carter chose to forgo any challenge to the state trial court's ruling on the knock and announce issue. Therefore, it is evident that no public policy factors weigh against applying the doctrine of issue preclusion to Carter's § 1983 claim.

In reality, instead of accepting his defeat in state court, Carter "c[a]me running to federal court after suffering a defeat in state court on an identical issue." *Boerner*, 326 F. Supp. 3d at 680. Allowing Carter to relitigate this issue would amount to allowing him another proverbial "bite at the apple," rendering the prosecution's victory in state trial court a "hollow victory." *Rille*, 2007 WI 36, ¶ 99. This would be fundamentally unfair, would "detract[] from finality of judgments," and would "pave[] the way for inconsistent decisions on the same set of facts." *Id.* ¶ 73. The doctrine of issue preclusion was created precisely to avoid this outcome.

Given that Carter's § 1983 claim rests on the same facts at issue in the prior lawsuit and involves identical legal standards to the ones applied to fourth amendment claims, and given that the state trial court already denied Carter's motion to suppress on the knock and announce issue, this Court should preclude him from relitigating the same issue in another court. Accordingly, Carter's § 1983 claim against Detective Busche should be dismissed with prejudice.

III. **ALTERNATIVELY, THE INABILITY TO PROVE PERSONAL PARTICIPATION ON THE PART OF DETECTIVE BUSCHE IN THE ALLEGED CONSTITUTIONAL VIOLATION REQUEST DISMISSAL OF THE CASE AGAINST HIM.**

Carter filed this lawsuit against Detective Busche alleging failure to knock or announce before entering. (Dkt. 61 at ¶¶ 11, 34). Carter has not identified or alleged any

17

additional constitutional violations against Detective Busche: he has not challenged the search of the basement, or the scope of such search. The alleged failure to knock and announce is the only claim Carter ties to Detective Busche. Based on Detective Busche's lack of involvement in the initial entry to the Property, this Court must dismiss Carter's claim.

When considering whether an officer is subject to § 1983 liability, courts follow a long-settled rule: "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). "The purpose of sec. 1983 is to deter state actors . . . from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (internal quotations omitted).

Here, Detective Busche had no part in the preparation of the search warrant or the initial entry into the home. (DBSF, ¶ 4). Detective Busche was not part of the initial entry team. (PJSF, ¶ 22; DBSF, ¶ 6). Detective Busche did not participate in the initial knock and announce. (DBSF, ¶ 6). Rather, once entry had been made by others, Detective Busche searched the common basement. There is no evidence to support the idea that Detective Busche was involved in any knock and announce (or lack thereof). Detective Busche's role was extremely limited and constitutionally permissive. Therefore, Detective Busche had no role in the alleged improper conduct which is the subject of plaintiff's lawsuit.

If this Court were to construe the complaint as including a claim based on the actual search warrant and whether it was based on probable cause, plaintiff's claim

against Detective Busche also fails. Detective Busche had no role in obtaining, preparing or evaluating the actual search warrant involved. (DBSF, ¶ 4). Therefore, since Detective Busche did not participate in the search warrant document, all claims against him in this regard, must be dismissed.

## IV. ALTERNATIVELY, DETECTIVE BUSCHE IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

Again, Carter has only alleged that Detective Carter violated the Fourth Amendment by failing to knock and announce. However, even if this Court finds that Carter challenged the search of the basement itself, even if Carter had some sort of legitimate expectation of privacy in the basement of the Property,[7] and even if this Court finds that issue preclusion does not bar Carter's claim against Detective Busche, Detective Busche's search of the basement was constitutionally permissible because it was conducted pursuant to a valid warrant.

### A. The warrant was properly issued based on probable cause.

The Fourth Amendment protects citizens from unreasonable searches of their homes. U.S. CONST. AMEND. IV. The Fourth Amendment embodies a "strong preference for searches conducted pursuant to a warrant," so a reviewing court pays "great deference" to the warrant judge's finding of probable cause. *United States v. McIntire*, 516 F.3d 576, 578-79 (7th Cir. 2008) (internal quotation omitted). Moreover, an affidavit supporting a search warrant is presumptively valid. *Molina v. Cooper*, 325 F.3d 963, 969 (7th Cir. 2003).

---

[7] Detective Busche reiterates that case law explicitly rejects the idea that Carter (or anyone for that matter) had any reasonable expectation of privacy in the basement of the Property.

"Searches undertaken pursuant to valid search warrants are presumptively valid, . . . and even flawed warrants can help to demonstrate good faith on the part of the officers . . . ." *Archer v. Chisholm*, 870 F.3d 603, 613–14 (7th Cir. 2017) (internal quotes and citations omitted). "In order to be valid, a search warrant must: (1) be issued by a neutral and disinterested magistrate; (2) establish probable cause that the evidence sought in the warrant will aid in obtaining a conviction of a particular offense; and (3) describe with particularity the things to be seized and the place to be searched." *Id.*

When evaluating the sufficiency of a warrant affidavit, courts "focus on the totality of the information presented" to the judicial official. *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1056–57 (7th Cir. 2018). "In determining whether probable cause existed, [courts] look only at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight." *Id.* (internal quotations omitted). "Only when an officer seeks or obtains a warrant so lacking in indicia of probable cause as to render belief in its existence unreasonable, may the officer face liability for damages." *Archer*, *supra*, at 613–14 (internal quotes and alterations omitted). To overcome this presumption, a plaintiff bears the burden of demonstrating that the officer "knowingly, intentionally, or with reckless disregard for the truth" made false statements or omitted information that would have been material to the district court's determination whether there was probable cause. *Id.* at 615.

Thus, to "survive summary judgment the plaintiffs must provide evidence that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and show that the false statements were necessary

to the judicial officer's determination that probable cause existed." *Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 596 (7th Cir. 2009) (internal quotes and alterations omitted). This "same standard applies to any alleged omissions in the warrant," and "[i]mmaterial misstatements or omissions do not invalidate the warrant." *Id.* (internal quotes omitted). Federal courts will thus uphold the probable-cause determination by the judge who evaluated the warrant application "so long as there is a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Edwards*, 907 F.3d at 1057 (internal quotations omitted).

"A magistrate's determination of probable cause should be paid great deference by reviewing courts," and "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Accordingly, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. Further, "[a]n officer violates the Fourth Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). "An affidavit that misleads by lies or omission undercuts the magistrate's ability to make an independent probable cause determination." *Id.* at 651.

Here, there is no dispute that a "neutral and disinterested magistrate" issued the search warrant. Despite all of Carter's various conspiracy theories, he has not once alleged that Commissioner Phillips was in any way impartial. Additionally, the search warrant in question and the application for same establishes probable cause that the

evidence sought will aid in obtaining a conviction – the affiant spoke with a confidential informant and conducted surveillance while the confidential informant participated in controlled buys of heroin from Carter and the Property. (PJSF, ¶13, Ex. 1011 at 2-8). Based on this observation alone, probable cause existed to believe that Carter was distributing narcotics from the Property. Finally, as explained below, the warrant was sufficiently particular.

While Carter alleges that various defendants in this case lied or omitted certain facts when applying for the search warrant, there is no evidence to support these allegations and "a plaintiff's speculation is not a sufficient defense to a summary judgment motion." *Goritz*, *supra*, at 882 (internal quotations omitted).[8] Carter has no evidence – testimonial or otherwise – that would support a finding the search warrant was invalid.

The warrant contained probable cause, Commissioner Phillips determined probable cause existed, the state trial court agreed the warrant contained probable cause, and Detective Busche conducted the search of the basement of the Property pursuant to the valid warrant.

### B.    The warrant allowed for a search of the basement.

"The Fourth Amendment requires that a warrant 'particularly describe[e] the place to be searched.'" *United States v. Kelly*, 772 F.3d 1072, 1081 (7th Cir. 2014) (quoting U.S. CONST. AMEND. IV). To satisfy the particularly requirement under the Fourth

---

[8] As Carter has not made any allegations that Detective Busche lied or omitted certain facts, Detective Busche will not address the details of Carter's conspiracy theories.

Amendment, a warrant's description need only be "such that the officer with [the] search warrant can, with reasonable effort ascertain and identify the place intended." *Id.* (internal quotations omitted). Significantly, "[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing [judge]." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). "Information that emerges after the warrant is issued has no bearing on this analysis." *Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009).

On February 12, 2016, Commissioner Barry Phillips authorized a search warrant that included the following description of the Property:

> **_DESCRIBE PREMISES:_**     5074 N 84th Street is the upper unit of a two story duplex with light green siding over red brick, white trim around the windows, and doors, with a dark shingle roof; that the numbers "5074" are prominently displayed to the left of the front door; that this premises is located in the City and County of Milwaukee, State of Wisconsin; Search to include **_all storage areas_** and vehicles **_associated with and accessible to_** "5074 N 84th Street" and all persons present on premises, certain goods, chattels and property . . .

(PJSF, ¶ 13, Ex. 1011 at 1) (emphasis added).

The basement of the Property was an "easily accessible" area to 5074 N 84th Street, was particularly described in the search warrant, and thus was included in the authorized search warrant. As Carter testified, both units within the multi-family dwelling could access the basement area; there was not even a separate door anyone would have to use to access the basement once they entered the front door of the Property. (DBSF, ¶ 3). Detective Busche's search of the basement was constitutionally valid as it was conducted pursuant to a valid warrant.

## V. ALTERNATIVELY, DETECTIVE BUSCHE IS ENTITLED TO QUALIFIED IMMUNITY.

Even assuming *arguendo* that this Court is unable to conclude that Carter lacks standing, or that issue preclusion bars Carter's claims, or that Detective Busche's search was constitutionally valid, summary judgment in Detective Busche's favor is still appropriate. Detective Busche is entitled to qualified immunity with respect to Carter's unreasonable search claim because, under the existing circumstances, his conduct did not violate any clearly established law or rights belonging to Carter.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (internal quotations omitted). A prior case exactly on point is not necessarily required. See, *e.g.*, *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). However, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it.'" *Sheehan*, 575 U.S. at 611 (internal quotations omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741 (internal citations omitted). This standard "gives government officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (internal quotations omitted).

The plaintiff always bears the burden of establishing the existence of a clearly established Constitutional right violated by the public official. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "When reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant." *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993).

Even if the contours of the federal right in question are found to have been clearly delineated at the relevant time, a public official may still enjoy qualified immunity if it was objectively reasonable for him to believe that his actions did not violate the federal right. In fact, public officials are shielded from suit where officials "of reasonable competence could disagree" that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, "if officers of reasonable competence could disagree . . . immunity should be recognized." *Id.*

In *Sheehan*, the Supreme Court criticized the Ninth Circuit for misreading prior Supreme Court precedent regarding qualified immunity. Specifically, the Court criticized the Ninth Circuit for defining the right in question—there, the Fourth Amendment right to be free from unreasonable searches and seizures—at too high a level of generality:

> [N]othing in our cases suggests the constitutional rule applied by the Ninth Circuit. The Ninth Circuit focused on *Graham v. Conner*, but *Graham* holds only that the "objective reasonableness" test applies to excessive-force claims under the Fourth Amendment. That is far too general a proposition to control this case. "We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." Qualified immunity is no immunity at all if "clearly established" law can simply be defined as the right to be free from unreasonable searches and seizures.

135 S. Ct. at 1775–76 (internal citations omitted).

As relevant here, Detective Busche is entitled to qualified immunity under 42 U.S.C. § 1983 unless the unlawfulness of his conduct was "clearly established at the time." *Sheehan*, 575 U.S. at 611. In the Fourth Amendment context, "a body of relevant case law" is necessary to "clearly establish the answer" with respect to probable cause. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (internal citations omitted). Here, the on-point case law makes clear that Detective Busche's search did not violate Carter's Fourth Amendment rights. *Sweeney*, *supra*, at 902.

Moreover, even if Detective Busche was mistaken about one or more of the relevant facts, a reasonable officer in his position could have believed that there was a reasonable belief that the search warrant was validly issued. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Unless it was objectively unreasonable for Detective Busche to believe the contents of the search warrant issued by Commissioner Phillips (that there was probable cause to search the Property), then Carter cannot challenge Detective Busche's search under the Fourth Amendment. *Heien v. North Carolina*, 574 U.S. 54, 60-67 (2014). What's more, even if Carter could establish it was unreasonable for Detective Busche to rely on the contents of the search warrant, no search warrant was required to search the shared basement of the Property. *Sweeney*, *supra*, at 902.

Plaintiff cannot and has not legitimately asserted that Detective Busche's reliance on the search warrant was unreasonable. Ultimately, even if his reliance was mistaken, it would have been reasonable and therefore entitled to qualified immunity. Added to the fact that Detective Busche did not even need a warrant to search the basement, Detective Busche was objectively reasonable in believing that his actions fell squarely within constitutional bounds. As such, qualified immunity bars Carter's Fourth Amendment claim of an unreasonable search.

## CONCLUSION

Based upon the foregoing arguments and authorities, Defendant Aaron Busche respectfully requests that this Court grant his Motion for Summary Judgment and dismiss Carter's claims on their merits and in their entirety, together with the costs and disbursements of this action.

Dated this 30th day of June, 2023.

CRIVELLO CARLSON, S.C.
Attorneys for Defendant Aaron Busche

By: *s/ Brianna J. Meyer*
AMY J. DOYLE
State Bar No.: 1001333
BRIANNA J. MEYER
State Bar No.: 1098293
710 North Plankinton Avenue
Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Email: adoyele@crivellocarlson.com
bmeyer@crivellocarlson.com