# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARVIN L. CARTER,

                    Plaintiff,

v.                                                          Case No. 16-CV-1430-JPS

JOHN KUSPA, WILLIAM J.
ESQUEDA, LAURA A. CRIVELLO,                          **ORDER**
MICKAL CHEMLICK, and AARON
BUSCHE,

                    Defendants.

## 1.    INTRODUCTION

In October 2016, Plaintiff Marvin L. Carter ("Plaintiff") filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants Laura Crivello ("Crivello"), William J. Esqueda ("Esqueda"), John Kuspa ("Kuspa"), Mickal Chemlick ("Chemlick"), and Aaron Busche ("Busche") violated his Fourth Amendment rights. ECF No. 1; *see also* ECF No. 61 (operative amended complaint). Because Plaintiff's underlying state criminal case remained ongoing, however, the Court "put a temporary halt to the[] proceedings." ECF No. 11 at 9 (citing *Younger v. Harris,* 401 U.S. 37, 53 (1971) and *Simpson v. Rowan,* 73 F.3d 134, 137 (7th Cir. 1995)).

Six years later, the Court lifted the stay and concluded that Plaintiff's Fourth Amendment claims were not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). ECF No. 64 at 7, 9. The Court also reiterated that Plaintiff's case would proceed "on the following claims:"

(1) [A] Fourth Amendment claim [against Busche, Kuspa, Esqueda, and Chemlick] for the unreasonable manner of the

February 16, 2016 search; (2) a Fourth Amendment claim for Kuspa and Esqueda's conduct in falsifying statements in the affidavit underlying the search warrant; and (3) a Fourth Amendment Claim for Crivello's submission of the search warrant knowing that the supporting affidavit contained falsehoods.

*Id.* at 12.

Now before the Court are three sets of Defendants' motions for summary judgment. ECF Nos. 127 (Busche motion), 137 (Chemlick, Esqueda, and Kuspa motion), and 133 (Crivello motion). [1] For the reasons discussed herein, the Court will grant all three motions for summary judgment and dismiss the case with prejudice.

---

[1]Plaintiff appears to have only responded to two of the three motions for summary judgment, neglecting to respond to that of Busche. ECF No. 149 at 1 ("Brief in Response to Defendant Crivello's Brief in Support of Her Motion for Summary Judgment") and at 111 ("Brief in Response to Defendants' [] Kuspa, [] Esqueda, and [] Chemlick Motion for Summary Judgment"). The Court may therefore deem Busche's proffered disputed facts, ECF No. 129, undisputed. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); Civ. L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

Plaintiff attempted to supplement his responses via two unauthorized surreplies received October 19 and 25, 2023, respectively, the former filed ostensibly on the ground that Crivello's reply presented "a whole new argument" with respect to immunity. ECF No. 155 at 2. The Court disagrees with this characterization of Crivello's reply, and in any event the Court does not dispose of Plaintiff's claim against Crivello on grounds of immunity, and so the Court will not consider Plaintiff's surreply for purposes of this motion. *See infra* Section 4.3. The ground for Plaintiff's subsequent surreply, ECF No. 156, is not entirely clear, and it largely reiterates arguments already made, so the Court will similarly disregard it.

## 2. FACTUAL BACKGROUND[2]

In February 2016, Kuspa, "being first duly sworn on oath," drafted and signed an affidavit in support of an application for a search warrant.[3] The affidavit stated, in relevant part:

### AFFIANT'S TRAINING & EXPERIENCE

1. That affiant is a state certified law enforcement officer for the Milwaukee Police Department's Narcotics Division currently assigned to the Milwaukee Metropolitan Drug Enforcement Group, and involved in the investigation of narcotics trafficking as well as individuals prohibited from the possession of firearms within the City of Milwaukee;

2. That affiant has worked full-time as a law enforcement officer for the past twenty-three (23) years;

. . .

### THE CONFIDENTIAL INFORMANT [the "CI"]

6. That affiant's application for a search warrant is based upon information which affiant received from a [CI] who[] identified the location of 5074 N 84th Street, in the City and County of Milwaukee, State of Wisconsin [the "Residence"], as being used for the distribution of heroin; furthermore, this [CI] did also describe the heroin trafficker who resides at [the Residence] who is involved in the trafficking of heroin as being . . . black male, early 30's, 6'3", 225 lbs,

---

[2] The following recitation of facts is drawn from the parties' agreed upon statement of facts, ECF No. 135, with minor, non-substantive edits. Internal citations therein have been omitted for brevity, and some facts have been omitted as ultimately immaterial. The Court also recites information from the affidavit at issue, which appears in the record at ECF No. 110-4. The Court also notes, where applicable, any proffered disputed facts. *See* ECF Nos. 129 ("Busche's Proposed Findings of Fact") and 139 ("Defendants' [Kuspa, Esqueda, and Chemlick] Proposed Findings of Fact").

[3] Defendants Kuspa, Esqueda, and Chemlick proffer as a disputed fact that "Chemlick was not involved with the [CI] or preparation of the search warrant." ECF No. 139 at 2. Similarly, Busche proffers that he "did not prepare or view the search warrant in question." ECF No. 129 at 2.

medium build, brown complexion, with short hair who was later positively identified as [Plaintiff] by reviewing a booking photograph . . . .

7. That affiant believes that the [CI] is reliable based on the fact that the [CI] has conducted in excess of 5 controlled buys for narcotics which evidence of narcotics were recovered and the events of the transactions as reported by the [CI] were verified and corroborated by law enforcement officers.

. . .

10. That affiant, while basing this affidavit on information provided by a reliable [CI], is also aware that any informant may be considered more credible if he or she has provided reliable information in the past leading to the issuance of a search warrant or to an arrest in establishing a favorable track record for the informant; that affiant is also aware that the absence of these facts does not necessarily deem any information provided by the informant as unreliable; secondly, since affiant was able to corroborate some, if not all, of the [CI's] assertions prior to the application for this search warrant by means of affiant's personal knowledge along with information supplied to affiant by other unrelated and independent sources of information, that this "independent police corroboration of the [CI's] assertions" imparts a degree of reliability to unverified details;

. . .

## PROBABLE CAUSE & INVESTIGATION

12. That affiant's application for a search warrant is based, in part, upon an investigation initiated by the affiant that includes an interview with a [CI] regarding narcotics trafficking of heroin by an individual identified as [Plaintiff], who is involved in the distribution of heroin, from the [R]esidence . . . ;

13. That within the past seventy-two hours (72) affiant searched the person and clothing of the [CI] as well as [CI's] vehicle to make sure that the [CI] had no controlled substances of

[sic] monies on their person or in vehicle; that the affiant had given the [CI] $100.00 dollars of pre-recorded U.S. currency;

14. That the affiant did follow the [CI] to [the Residence]; that surveillance officers observed [Plaintiff] arrive at the [R]esidence just prior to the [CI's] arrival and use a key to gain entry into the [R]esidence through the front door; and after the [CI's] arrival surveillance officers observed [Plaintiff] exit out of the [R]esidence of 5074 N 84th Street through the side door located on the south side of the [R]esidence; that surveillance officers observed [Plaintiff] walk up to the [CI] and conduct a hand to hand transaction; that surveillance officers then observed [Plaintiff] walk back to and enter the [R]esidence . . . through the south side door where [Plaintiff] remained; that affiant followed the [CI] to a pre-determined location where the [CI] gave affiant the suspected heroin that the [CI] purchased from [Plaintiff] while outside the [R]esidence . . . ; that the [CI] related to affiant the circumstances of the purchase; lastly, that affiant did again search the [CI] and [CI's] vehicle and that the [CI] had no controlled substances or monies on the [CI's] person, vehicle or clothing;

15. That affiant believes, based upon the affiant's conversation with the [CI] as well as affiant's personal observation of the appearance of the substance and the manner in which the substance was packaged, that the aforementioned substance is heroin;

. . .

34. WHEREFORE, affiant believes, based on the above stated information, that affiant has established the requisite amount of probable cause to believe that evidence of the crime of Possession with Intent to Deliver (Heroin), contrary to Section 961.41(1m)(d) of the Wisconsin Statutes, does not exist at the location as described [above]; that based upon affiant's training and experience, affiant seeks permission to search all persons on the premises because the premises in question is a private residence and drugs or other drug-related contraband may easily be secreted on one's person; furthermore, that the

execution of a controlled substance search warrant often reveals the presence of persons other than the residents on the premises and that such persons include, but are not limited to, persons helping with the sale of controlled substances, potential drug buyers, and drug users and it is common to find controlled substances and drug paraphernalia on these persons;

35. This affidavit was reviewed and approved by Assistant District Attorney [] Crivello on February 11th, 2016.

That same day, Crivello notarized Kuspa's signature. At all times relevant to this lawsuit, Crivello served as an Assistant District Attorney for Milwaukee County and as the "captain in charge of prosecution for the High[] Intensity Drug Trafficking Area." Crivello testified in this case that "reviewing and approving the search warrant affidavit was part of her job":

> The local court rules . . . have, I believe, the fact that the DA's Office is charged with reviewing these documents and that's why . . . we put in that last sentence on the warrants, who the warrant has been reviewed and approved by. And in this particular case it clearly was me. And I did that on February 11th of 2016 as part of my job, which is what I do on a daily basis. . . . That's part of my role as a prosecutor in Milwaukee County.

Crivello also testified that "[b]ecause the photographs and video [of the February 10, 2016 controlled buy] were not part of the search warrant application, they played no role in the probable cause determination and the warrant stands without reliance on either of these items of evidence."

A state court Commissioner signed the warrant on February 12, 2016. The warrant provided:

> Detective [] Kuspa has this day complained (by attached affidavit) to this Court upon oath showing probable cause that on Friday, February 12th, 2016, in the County of

Milwaukee, there is now located and concealed in an [sic] upon certain premises . . . occupied by [Plaintiff] . . . .

1. Heroin – a white or brown chunky powdery or black tar-like substance;

2. Scales, paper packets, plastic bags, and other items used to package heroin for sale;

3. Drug-related paraphernalia, records, and monies

4. Documents, utility bills, keys, cell phones, and other items used to show who is in control of the premises;

5. Weapons and automobiles owned by or associated with the occupants[.]

Law enforcement—including Kuspa, Busche, Esqueda, Chemlick, and other agents of the Milwaukee Metropolitan Drug Enforcement Group and Wisconsin High Intensity Drug Trafficking Areas—executed the warrant and performed a search of the Residence on February 16, 2016.[4] Kuspa was the lead officer in the investigation, was the team leader of the entry team, and was the affiant for the underlying search warrant.

Plaintiff alleges that the officers failed to knock and announce before entering the Residence. Kuspa, Esqueda, and Chemlick dispute this and assert that "[w]hile executing a search warrant at [the Residence], officers knocked and announced their presence . . . ." and that they "were concerned about officer safety and possible evidence destruction." ECF No. 139 at 1–2. According to Kuspa, Esqueda, and Chemlick, "[o]fficers heard someone come to the door and refuse to open [it]," then "heard that person run up the stairs," at which point "[o]fficers breached the lower door and then went upstairs and breached the upper door." *Id.* Plaintiff conceded in his

---

[4]Chemlick, Esqueda, and Kuspa served as law enforcement officers for the City of Milwaukee while Busche served as a law enforcement officer for the City of Greenfield.

deposition that "officers could have knocked and announced . . . and he would not have heard it, because he was sleeping." *Id.* Kuspa, Esqueda, and Chemlick also proffer as a disputed fact that Esqueda "was part of the containment team, not the entry team when executing the search warrant." *Id.* Similarly, Busche asserts that he "did not participate in the initial knock and announce or initial entry into the [Residence]." ECF No. 129 at 2.

Following their entry to the Residence, the officers recovered, inter alia, "personal identifiers for [Plaintiff]" including "court paperwork"; plastic bags containing heroin, cocaine base, and power cocaine; digital gram scales; and a semi-automatic loaded pistol. Esqueda and Busche, specifically, searched the basement of the Residence and recovered multiple evidentiary items therein.

Plaintiff was thereafter charged in Milwaukee County Circuit Court Case No. 2016CF000762 with "count one, possession with intent to deliver controlled substance, cocaine, second and subsequent offense, use of a dangerous weapon. Count two, possession with intent to deliver controlled substance, heroin, use of a dangerous weapon, second and subsequent offense. And count three, possession of firearm by a felon." On February 20, 2016, Plaintiff appeared before a Commissioner for an initial appearance. The Commissioner noted that he had reviewed the complaint, and he made a finding of probable cause.

On February 29, 2016, the court held a preliminary hearing, at which time Plaintiff waived his right to have the hearing. The court confirmed that no one had threatened Plaintiff "to make [him] give up that hearing" and that Plaintiff understood that "by waiving [the preliminary] hearing [Plaintiff] [was] conceding that the State can establish probable cause."

Several months later, Plaintiff's defense attorney, Attorney Schoenfeldt ("Schoenfeldt"), moved to suppress physical evidence recovered in the February 16, 2016 search, arguing that "the [executing] officers did not knock and announce . . . before forcibly entering the [Residence]," in violation of Plaintiff's Fourth Amendment rights. In an amended brief in support, Schoenfeld added the argument that while "[t]he affidavit in support of the . . . warrant . . . attempts to draw a nexus between [Plaintiff's] residence and [the] alleged controlled buy carried out by [the CI]," "the details of th[e] alleged prior buy as laid out in the affidavit . . . are simply not sufficient to allow the inference that [Plaintiff] sold drugs to the [CI]." The circuit court denied the motion in August 2016. It also denied Schoenfeldt's argument that the officers failed to knock and announce in violation of the Fourth Amendment: "The Court will find that because that exigency occurred at that lower level, the officers could then run up the stairs and make entrance to the second door without knocking and announcing . . . . I'll find the officers did act appropriately under these circumstances, and therefore The Court will deny the defense motion."

Between Schoenfeldt's filing of the motion to suppress and the court's disposition thereof, Plaintiff filed a letter with the court questioning how Crivello could "review, sign, date, and approve the affidavit for a search warrant and still be the prosecutor in [the] case." In August 2016, Plaintiff also filed a pro se motion with the circuit court to "disclose the identity of the [CI]." Roughly a week later, Schoenfeldt, on Plaintiff's behalf, filed a motion and brief in support to compel disclosure of the CI's identity.

In September 2016, the circuit court held a final pretrial hearing, at which time Schoenfeldt moved to withdraw due to having "reached an impasse" with Plaintiff. The court also indicated it would wait to address

the motion to compel disclosure of the CI's identity until Plaintiff obtained new counsel, and that motion was later denied. The following month, October 2016, Plaintiff initiated the instant lawsuit in federal court.

At a renewed final pretrial hearing in December 2016, Plaintiff inquired about disclosure of "evidence relat[ing] to the February 2016 search warrant." Crivello asserted that Plaintiff was "not entitled to any of that" evidence because Plaintiff was "charged with the evidence recovered during the search warrant," "not . . . with the underlying buy." Defendant argued: "that's what they use for probable cause to come get a search warrant." To this the circuit court responded, "[t]hat's past already. The search warrant was a motion hearing, which has past already."

After two days of jury trial in February 2017, Plaintiff changed course and pleaded guilty to "possession with intent to deliver a controlled substance, three grams or less, use of a dangerous weapon, second or subsequent offense" and "possession of a firearm by a felon." Some weeks later, and then again two more times in the following months, he unsuccessfully moved to withdraw his guilty plea,[5] asserting ineffective assistance of counsel for, inter alia, failing to "ask[] the court to bar . . . Crivello from representing the state in this case" and for failing to "ask[] the court to 'nullify' some Affidavits . . . notarized by . . . Crivello." The circuit court sentenced Plaintiff to nine years of confinement.

---

[5] For context, it appears that Plaintiff originally agreed to plead guilty in exchange for "dismissal of the cocaine and narcotic drugs charges" and for the state to "recommend a six-year sentence," but that "the prosecutor backtracked at sentencing" and the circuit court sentenced Plaintiff to "nine years' imprisonment—three more than the parties agreed to recommend." *Carter v. Buesgen*, 10 F.4th 715, 717 (7th Cir. 2021).

It was not until November 2020, and not until the Seventh Circuit addressed Plaintiff's appeal from the denial of a 28 U.S.C. § 2254 petition, *see generally Carter,* 10 F.4th 715, that Plaintiff was finally able to move for postconviction relief in the state courts, asking for "an order allowing him to withdraw his guilty pleas." In September 2021, the parties stipulated before the circuit court to modify Plaintiff's sentence to "six years in confinement." In this stipulation, Plaintiff agreed to "giv[e] up his right to challenge his convictions or sentence in this case."

## 3.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only

come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (quoting *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015)).

## 4. ANALYSIS

### 4.1 Manner of Search

Plaintiff alleges that in executing the warrant on February 16, 2016, Defendants Kuspa, Busche, Esqueda, and Chemlick failed to knock and announce before entering the Residence. ECF No. 61 at 3, 5. Kuspa, Esqueda, and Chemlick contend that those officers who undertook the initial entry into the Residence *did* knock and announce. ECF No. 139 at 2. Meanwhile, Busche and Esqueda contend that they did not participate in the initial entry into the Residence and therefore could not have failed to knock and announce.[6] *Id.*; ECF No. 129 at 2.

---

[6]Plaintiff offers nothing from which any inference can be made that either Busche or Esqueda were present at the initial entry of the Residence. To the contrary, the only conclusion the record allows is that Busche and Esqueda were not among those officers involved in the initial entry. *See* ECF No. 149 at 205 (listing Kuspa and Chemlick, but not Busche or Esqueda, among the "Entry Team" and listing Busche and Esqueda in "Containment"); ECF No. 125-31 at 1 (same); ECF No. 130 at 2 (Busche declaration) ("I did not participate in the initial knock and announce or initial entry into the Property."); ECF No. 149 at 199 ("Containment consisted of myself, . . . [] Esqueda, . . . [and other non-party officers]."); ECF No. 144 at 2 (Esqueda declaration) ("I was part of the containment team, not the entry team."). Plaintiff's own conclusory assertions to the contrary are insufficient to create a genuine dispute to prevent summary judgment. *See* ECF No. 125 at 15 (Plaintiff deposition) ("I think [Esqueda] was part of the entry team too that searched the residence and, again, unlawfully."); *Mills v. First Fed. S & L*

In any event, Kuspa, Esqueda, and Chemlick argue that this claim is "barred by collateral estoppel," or "issue preclusion," because it "is identical to the claim litigated in the . . . state court case" and it would be "fundamentally fair for issue preclusion to apply." ECF No. 138 at 3–7; *see also* ECF No. 128 at 9–17.

"Collateral estoppel can bar a plaintiff from relitigating a Fourth Amendment search-and-seizure claim that he lost at a criminal suppression hearing." *Corder v. City of Chicago*, No. 10C 1927, 2010 U.S. Dist. LEXIS 111093, at *6 (N.D. Ill. Oct. 18, 2010) (citing *Allen v. McCurry*, 449 U.S. 90, 104–05 (1980) and *Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir. 1984)). "[F]ederal district courts apply the relevant state's issue preclusion doctrine to determine what, if any, preclusive effect a state-court judgment has on a Section 1983 claim." *Peraica v. McCook*, 124 F. Supp. 3d 816, 822 (N.D. Ill. 2015) (citing *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010)).

"[U]nder applicable Wisconsin law, issue preclusion, also called collateral estoppel, bars the relitigation of a factual or legal issue that actually was litigated and decided in an earlier action." *Virnich v. Vorwald*, 664 F.3d 206, 215 (7th Cir. 2011) (citing *N. States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995)). "[I]ssue preclusion requires that the issue sought to be precluded"—here, whether the officers knocked and announced and, if not, whether such failure was violative of Plaintiff's Fourth Amendment rights—"must have been *actually* litigated previously." *Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994).

---

*Ass'n*, 83 F.3d 833, 840 (7th Cir. 1996) ("Conclusory allegations by the party opposing the motion cannot defeat the motion.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995)).

"To determine whether the doctrine of issue preclusion bars a litigant's claim, [Wisconsin] courts apply a two-step analysis: (1) we ask 'whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair.'" *Love v. Smith*, 875 N.W.2d 131, ¶ 25 (Wis. Ct. App. 2015) (quoting *Rille v. Physicians Ins. Co.*, 728 N.W.2d 693, ¶ 36 (Wis. 2007)). Moreover, "[t]he issue of fact need . . . have been 'essential to the judgment.'" *Heggy v. Grutzner*, 456 N.W.2d 845, 849 (Wis. Ct. App. Mar. 15, 1990) (quoting *In Interest of T.M.S.*, 448 N.W.2d 282, 286 (Wis. Ct. App. 1989)).

The issue of whether officers appropriately knocked and announced and, if not, whether such failure violated Plaintiff's Fourth Amendment rights, was actually litigated and decided in Plaintiff's underlying state case. "An issue is 'actually litigated' when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *State v. Killian*, 991 N.W.2d 387, ¶ 54 (Wis. 2023) (quoting *Dostal v. Strand*, 984 N.W.2d 382, ¶ 24 (Wis. 2023)).

Schoenfeldt moved the circuit court to suppress the evidence obtained in the search of the Residence on the ground that the officers failed to knock and announce. ECF No. 135 at 9. The circuit court heard testimony on the issue at an evidentiary hearing, and Schoenfeldt cross-examined the witness on the same. *See* ECF No. 125-17 at 14–30. The court ultimately denied the motion to suppress and rejected Plaintiff's knock-and-announce argument. ECF No. 135 at 11 ("The Court will find that because that exigency occurred at that lower level, the officers could then run up the stairs and make entrance to the second door without knocking and announcing . . . ."). In light of these circumstances, the Court has no doubt

that the knock-and-announce issue was actually litigated and decided previously.[7]

Moreover, the resolution of that issue was essential to the judgment because the fruits of the search were precisely what formed the state case against Plaintiff. *See* ECF No. 135 at 12 (Crivello asserting that Plaintiff was not entitled to evidence relating to the CI because Plaintiff was "not charged with the underlying buy, he's charged with the evidence recovered during the search warrant"); RESTATEMENT (SECOND) OF JUDGMENTS, § 27 (Am. L. Inst. 1982) ("The appropriate question . . . is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment.").

Next, the Court must analyze whether application of issue preclusion in this case would be fundamentally fair. In this portion of the analysis, the court considers five factors:

> (1) Could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party

---

[7]Plaintiff argues that this claim "was not actually litigated" in his state court case because, at that time, he lacked "evidence that was unknown to [him] at the hearing back then verses [sic] now," namely, police incident reports. ECF No. 149 at 119. Even assuming that Plaintiff did lack such evidence, that does not mean that the claim was not actually litigated. Plaintiff offers no legal authority suggesting otherwise, and the Court has independently found none. He also asserts that the state "court's decision was not well reasoned," *id.* at 121, but he provides no further explanation or argument on that point. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.") (citing *Uncommon, LLC*, 926 F.3d at 419 n.2 and *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)).

seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including adequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Lindas*, 515 N.W.2d at 464 (quoting *Michelle T. v. Crozier*, 495 N.W.2d 327, 330–31 (Wis. 1993)). These factors are "not exclusive," nor is any single one dispositive. *Rille*, 728 N.W.2d, ¶ 38.

Kuspa, Esqueda, Busche, and Chemlick argue that it would be fundamentally fair to apply issue preclusion in this case because "Plaintiff was represented by counsel," "the court heard testimony on the issue," and "Plaintiff chose not to file an appeal regarding the suppression motion, despite filing other appeals." ECF No. 138 at 6; ECF No. 128 at 16 ("[Plaintiff] did not challenge the state trial court's finding that law enforcement's entry into the [Residence] and subsequent search was unconstitutional, despite having the opportunity to do so."). Indeed, the fact that the party seeking to relitigate an issue "could have had the [issue] judicially reviewed [in the previous case], but chose not to" favors application of issue preclusion. *See Lindas,* 515 N.W.2d at 464.

A "full and fair opportunity to litigate" for purposes of issue preclusion "includes the right to appeal an adverse decision." *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) (collecting cases). The Court is admittedly concerned with respect to Plaintiff's true ability to appeal, and be promptly and effectively heard on, the circuit court's rejection of his knock-and-announce argument. *See* ECF No. 149 at 123 ("A suppression motion decision is appealable but in [Plaintiff's] defense he never had that opportunity to appeal the suppression motion . . . . due to the severe

stagnation . . . on his appellant counsel['s] behalf and the Wisconsin appeal process . . . ."); *see also Carter*, 10 F.4th at 723 (describing the roughly four year delay for the Wisconsin Court of Appeals to address Plaintiff's postconviction motion and agreeing that "state court remedies in Wisconsin are ineffective to protect [Plaintiff's] rights").

Nevertheless, and notwithstanding Plaintiff's frustrated attempts at postconviction appeal, "[n]one of [which] [wa]s [his] fault," *Carter*, 10 F.4th at 716, the Court believes that "the sum of the fundamental-fairness factors does not weigh against applying preclusion . . . ." *Jackson v. Vartanian*, No. 22-2051, 2023 U.S. App. LEXIS 8431, at *9–10 (7th Cir. Apr. 10, 2023); *see Corder*, 2010 U.S. Dist. LEXIS 111093, at *7 (applying issue preclusion to prevent plaintiff from relitigating knock and announce argument where the plaintiff "was represented in the [previous] action," "[t]he state court held a hearing on the motion[] [to suppress]," and the state court rejected the argument). Plaintiff received a full opportunity to advance this argument before the state trial court. He complains that he did not have the opportunity to appeal the state trial court's decision to the Wisconsin Court of Appeals because of the stagnation of his postconviction appeal, but Plaintiff never included the knock-and-announce argument in his motion for postconviction relief in the first place. *See generally* ECF No. 125-27. The stagnation of his appeal is therefore somewhat of a red herring or convenient post-hoc rationalization; irrespective of any delay on the part of the Wisconsin Court of Appeals, Plaintiff neglected to proffer the knock-and-announce argument to that court. *Cf. Gray*, 885 F.2d at 406–07 (litigant did not have full and fair opportunity to litigate, and therefore was not precluded from relitigating, issue that court of appeals expressly declined to reach, where litigant "*tried to appeal*" the ruling) (emphasis added). In the

instant case, it appears that Petitioner never tried to appeal the issue he now seeks to relitigate.

And after the Wisconsin Court of Appeals finally acknowledged his postconviction motion, Plaintiff entered into a stipulation with the State for a reduced sentence contingent on his agreement that he would "giv[e] up his right to challenge his convictions or sentence in this case." ECF No. 135 at 15. In other words, to the extent he may have had any further opportunity to challenge the circuit court's disposition of his motion to suppress, he appears to have consented to give up that opportunity.

There is also no indication here that the consideration that Plaintiff received on the issue before the circuit court was lacking. *Cf. Jackson,* 2023 U.S. App. LEXIS 8431, at *9 (acknowledging that "differences in the quality of the proceedings (including that [the party opposing preclusion] never received an evidentiary hearing on his . . . motion)" weigh against preclusion). Nor have the burdens of proof shifted such that preclusion in this case would be unfair. *See State v. Whitrock,* 468 N.W.2d 696, 701 (Wis. 1991) (burden of proof on motion to suppress is preponderance of the evidence); *Shaw v. Leatherberry,* 706 N.W.2d 299, ¶ 23 (Wis. 2005) ("[F]ederal courts consistently require plaintiffs to prove their § 1983 claims under the lower burden of proof—a preponderance of the evidence.") (citing *Crawford-El v. Britton,* 523 U.S. 574, 594 (1998)).

In light of the foregoing, the Court concludes that the doctrine of collateral estoppel, or issue preclusion, precludes Plaintiff from attempting to relitigate the knock and announce issue. For that reason, and because there is no evidence in the record from which it can be concluded that either Busche or Esqueda were even present for the initial entry of the Residence

(and therefore necessarily could not have failed to knock and announce),[8] *see supra* note 6, the Court will grant summary judgment to Busche, Kuspa, Chemlick, and Esqueda on this claim.[9]

## 4.2 Affidavit with Allegedly Falsified Statements

Plaintiff alleges that, on February 11, 2016, Kuspa presented an affidavit in support of an application for a search warrant to Crivello in which he falsely asserted that he observed Plaintiff make a controlled buy from the Residence. ECF No. 61 at 3, 5.[10] For the sake of completeness, the Court also analyzes this claim as to Esqueda. ECF No. 1 at 8 (alleging that both Kuspa and Esqueda acted "in bad faith by falsifying the affidavit to attain a search warrant"); ECF No. 11 at 5 (acknowledging Plaintiff's allegations of the same and stating that Plaintiff "may proceed on the . . . claim[] [regarding] . . . Kuspa and Esqueda's conduct in falsifying statements in the affidavit underlying the search warrant").

---

[8]Because the Court resolves the only claim against Busche on these grounds (of issue preclusion and lack of personal involvement), the Court need not address Busche's alternative arguments that Plaintiff lacks standing to bring the claim, ECF No. 128 at 4, and that Busche is protected by qualified immunity, *id.* at 24.

[9]To the extent that Plaintiff attempts to extend his claim against these officers to encompass not only the alleged failure to knock and announce, but also for the search being conducted illegally as a general matter, ECF No. 125 at 14; ECF No. 128 at 6 n.2, it is unclear what, if any, other aspect of the manner of the search was allegedly violative of Plaintiff's Fourth Amendment rights. The Court declines to scour the record in an attempt to find some other manner in which the search of the Residence may have been conducted improperly.

[10]In both his deposition and response in opposition to summary judgment, Plaintiff elaborates as to various other alleged falsities in the affidavit, although the Court finds his contentions difficult to understand. He seems to claim that the CI had "never been to the . . . [R]esidence in the pas[t]" and could not, therefore, "lead [] Kuspa" there and "identif[y] it . . . as being used to distribute heroin on February 10, 2016" and that the affidavit falsely "tryed [sic] to make it seem like [Plaintiff] resided at [the Residence]." ECF No. 149 at 141–59, 239–43.

"There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To overcome this presumption and avoid summary judgment in a § 1983 case, a plaintiff first "must provide evidence that the officers 'knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer.'" *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003) (quoting *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003)). "A 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Beauchamp*, 320 F.3d at 743 (citing *United States v. Whitley*, 249 F.3d 614, 620–21 (7th Cir. 2001) and *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000)).

Second, the plaintiff must show that "the false statements were necessary to the judicial officers' determinations that probable cause existed for the arrests." *Molina*, 325 F.3d at 968 (quoting *Beauchamp*, 320 F.3d at 742). "Immaterial misstatements will not invalidate an otherwise legitimate warrant." *Id.* (quoting *Forman v. Richmond Police Dep't*, 104 F.3d 950, 964 (7th Cir. 1997)); *see also Taylor v. Hughes*, 26 F.4th 419, 427 (7th Cir. 2022) ("To earn a trial on such a claim, a § 1983 plaintiff must bring forth enough evidence to permit a reasonable jury to conclude that the defendant officer made intentional or reckless misrepresentations of fact that were necessary to the finding of probable cause." (citing *Perlman v. City of Chicago*, 801 F.2d 262, 264–65 (7th Cir. 1986)).

Kuspa and Esqueda argue that Plaintiff "cannot meet his burden to show a Fourth Amendment claim" for the alleged falsification of statements

in the affidavit. *See* ECF No. 138 at 8.[11] The Court agrees. On the record before the Court, no reasonable juror could conclude that either Kuspa or Esqueda made falsified statements in the affidavit. The only evidence in the record from which such a conclusion could be inferred is Plaintiff's deposition testimony, and as noted, conclusory, uncorroborated allegations—much of which, here, is based on speculation and lacks a foundation of personal knowledge—are insufficient to create a genuine dispute of material fact. *See, e.g.,* ECF No. 125 at 18 (Q: "You're saying that the investigation in its entirety is false, correct?" A: "[Y]es, it's definitely false . . . . This is not how it happened . . . . This did not happen.") and at 17 ("[A]t that point in time there wasn't no [sic] heroin from that person that was ever bought from this alleged guy that they say is me.") ("[T]he investigation was false, and then what the [CI] is saying is false."); *Mills,* 83 F.3d at 840; *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.") (citing *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 446 (7th Cir. 1997) and *Edward E. Gillen Co. v. City of Lake Forest,* 3 F.3d 192, 196 (7th Cir. 1993)); *Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir. 2003) ("Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory

_____

[11]Kuspa and Esqueda do not argue that Plaintiff is barred from relitigating this claim by virtue of issue preclusion, even though it appears that Plaintiff did make this argument before the circuit court. *See* ECF No. 125-26 at 4 ("The new thing that is contained in the . . . motions that [Plaintiff] has filed is that the basic contention is still the same as it was in his first motion, which is that there were false statements made in the affidavit that obtained the search warrant and that if there had not been false statements in the affidavit, the search warrant would not have been granted.").

statements in the deposition do not create an issue of fact.") (citing *Mills*, 83 F.3d at 843).

Furthermore, even if the Court were to conclude that a reasonable juror could find that Esqueda and Kuspa falsified statements in the affidavit, there is nothing in the record to allow for the conclusion that any such statements would have been made "knowingly or intentionally or with a reckless disregard for the truth," as opposed to merely negligently. *Molina*, 325 F.3d at 968 (quoting *Beauchamp*, 320 F.3d 742); *Whitley*, 249 F.3d at 621 ("[T]he standard require[s] more than mere negligence on the part of the affiant.") (citing *Franks*, 438 U.S. at 171). "[A] fact finder may infer reckless disregard from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations," *Whitley*, 249 F.3d at 621 (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)), but the Court does not discern such circumstances here. Similarly, Plaintiff makes no attempt here to argue that any of the alleged falsified statements "could have affected the [Commissioner's] decision to issue a search warrant," or, put otherwise, that the allegedly falsified statements were necessary to the finding of probable cause. *Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010).

"[S]ummary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party's "own beliefs are not enough to defeat a motion for summary judgment." *Hereford v. Catholic Charities, Inc.*, No. 18-cv-1049-JDP, 2020 U.S. Dist. LEXIS 78711, at *17–18 (W.D. Wis. May 5, 2020).

Plaintiff has failed to meet his burden of putting forward evidence to support his version of events and "to rebut the presumption of validity attached to an affidavit in support of a search warrant." *Parkey*, 623 F.3d at 1165 (citing *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 595 (7th Cir. 2009)); *see also Swift v. City of Milwaukee*, No. 07-C-857, 2009 U.S. Dist. LEXIS 5256, at *14–15 (E.D. Wis. Jan. 24, 2009) ("Although plaintiff asserts that information in the affidavit was false, he offers no evidence from which a jury could reasonably infer that [the defendant] made any statements with knowledge that they were false or with reckless disregard for the truth . . . . Because this is not enough to create a triable issue of fact, [the defendant] is entitled to summary judgment on this claim.") (citing *Forman*, 104 F.3d at 964). Accordingly, the Court will grant summary judgment to Kuspa and Esqueda on this claim.

### 4.3 Submission of Search Warrant Allegedly with Knowledge that it Contained Falsified Statements

Last, Plaintiff alleges that Crivello "knowingly deceive[d] the Milwaukee County Circuit Court into issuing [sic] a search warrant" for the Residence because she knew that information in the affidavit "was materially false and did not provide a nexus between the residence and any illegal activity." ECF No. 61 at 3, 5. Crivello moves the Court to dismiss this claim because "she is immune from suit," the claim is "barred by issue preclusion," and, alternatively, "she did not violate [Plaintiff's] Fourth Amendment rights." ECF No. 134 at 1.

First, Crivello argues that she "was acting within the scope of her prosecutorial duties" when she reviewed and approved the affidavit and that she is therefore entitled to prosecutorial immunity. *Id.* At 4–6. Prosecutorial immunity extends to "conduct that is functionally

prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 341–43 (2009); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); and *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

The Court has found conflicting caselaw regarding whether a prosecutor is entitled to absolute immunity for her review and approval of an affidavit in support of a warrant. *Compare Lewis v. Hoppe,* No. 16-cv-378-pp, 2020 U.S. Dist. LEXIS 194100, at *10 (E.D. Wis. Oct. 20, 2020) ("Because reviewing and approving a search warrant application is an investigative task, and not one in which the prosecutors were acting as officers of the court, absolute immunity does not apply.") (citing *Van de Kamp*, 555 U.S. at 342)) *and Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 U.S. Dist. LEXIS 64305, at *18 (D. Colo. June 16, 2011) ("Pre-arrest review of a search warrant affidavit by a prosecutor . . . does not fall within a prosecutor's role as an advocate and is not covered by prosecutorial immunity.") (citing *Mink v. Suthers*, 482 F.3d 1244, 1262 (10th Cir. 2007)), *with Ramos v. Poore,* 2017 U.S. Dist. LEXIS 54820, at *11 (D. Conn. Apr. 11, 2017) ("To the extent that [plaintiff] is claiming that the Chief State's Attorney approved the affidavit in support of the application for a warrant to arrest him on September 18, 2012 and submitted the arrest warrant application . . . the Chief State's Attorney is entitled to prosecutorial immunity. . . . Because a prosecutor's conduct in applying for a warrant for an individual's arrest is closely associated with the initiation of judicial proceedings and conducting a trial, the Chief State's Attorney is immune from suit.") (citing *Imbler*, 424 U.S. at 431 n.33). In light of this conflict, the Court will set aside the prosecutorial immunity argument.

Alternatively, Crivello argues that Plaintiff is precluded from relitigating this issue by virtue of collateral estoppel. As noted previously, "issue preclusion requires that the issue sought to be precluded must have been *actually* litigated previously." *Lindas*, 515 N.W.2d at 463. Crivello points to the fact that Plaintiff "raised challenges to the sufficiency of the search warrant in a motion to suppress, letter to the court, motion for discovery demand, and motions to withdraw his guilty plea." ECF No. 134 at 7. But Plaintiff's motion to suppress argued only that the officers failed to knock and announce and that the affidavit, as a general matter, "fail[ed] to establish probable cause for the search." ECF No. 125-15 at 4. He did not therein argue that the fruits of the search should be suppressed because of any conduct on Crivello's part. Similarly, in Plaintiff's letter to the court, he inquired how Crivello had the authority to review, approve, sign, and date the affidavit while simultaneously serving as the prosecutor in his criminal case, ECF No. 125-16 at 1, but he did not therein argue that Crivello approved the affidavit knowing that it contained falsehoods. Nor did Plaintiff's motion for discovery demand make this argument—in it, he merely requested a series of evidentiary items to which he believed he was entitled. ECF No. 125-21. Finally, Plaintiff's motion to withdraw his guilty plea alleged that his trial counsel was ineffective for, inter alia, failing to "ask[] the court to bar . . . Crivello from representing the state in this case" and failing to "ask[] the court to 'nullify'" the affidavit notarized by Crivello. ECF No. 125-25 at 2. These arguments seem to essentially repeat those made by Plaintiff in his letter to the court, but again, he did not in his motion to withdraw his guilty plea specifically allege that Crivello approved the affidavit knowing that it contained falsehoods. The Court is

not, therefore, entirely satisfied that the issue Plaintiff now proffers with respect to Crivello was actually litigated and decided previously.

Even if issue preclusion does not prevent Plaintiff from proffering this argument, however, the claim still fails because there is no evidence in the record from which a reasonable juror could conclude that Crivello approved the affidavit knowing that it contained falsehoods. In other words, even if the Court were to conclude that Crivello is not entitled to prosecutorial immunity, and even if the Court were to further conclude that Plaintiff is not precluded from relitigating this issue, the claim would nevertheless fail because Plaintiff offers nothing besides his conclusory, uncorroborated deposition testimony to support it and, in fact, concedes in his deposition that he has no evidence to support the claim. *See supra* Section 4.2; *see also* ECF No. 125 at 3 (Plaintiff deposition) ("Now, whether [Crivello] knew beforehand [that the affidavit contained falsities], that's something that nobody knows of, but I'm quite sure she knew after the fact.") and at 4 (Q: "What sentence . . . do you contend that [] Crivello knew was false at the time this search warrant affidavit was filed?" A: "At the time it was filed, I don't know if she knew at that point, because nobody knows what she reviewed or seen while she was reading the affidavit . . . .") (Q: [W]hat evidence do you have that [] Crivello knew those paragraphs were false at the time that the affidavit was filed or reviewed?" A: "I just told you I didn't know what evidence. I don't have any evidence that she knew at the time or the signing that the affidavit was false. I don't have evidence to prove that. No one has no evidence.").

5. **CONCLUSION**

For the reasons discussed herein, the Court will grant summary judgment for Defendants on all claims.

Accordingly,

**IT IS ORDERED** that Defendant Aaron Busche's motion for summary judgment, ECF No. 127, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Mickal Chemlick, William J. Esqueda, and John Kuspa's motion for summary judgment, ECF No. 137, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Laura A. Crivello's motion for summary judgment, ECF No. 133, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.